Citation Nr: 1730451 
Decision Date: 07/27/17 Archive Date: 08/09/17

DOCKET NO. 10-12 694 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to diabetes mellitus, Type II.

2. Entitlement to an initial rating in excess of 20 percent for diabetes mellitus, Type II, with erectile dysfunction. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Faverio, Associate Counsel



INTRODUCTION

The Veteran served on active duty from April 1966 to September 1969. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which, inter alia, granted service connection for diabetes mellitus, type II, and assigned an initial 20 percent rating, effective December 7, 2007, and denied service connection for hypertension, to include as secondary to diabetes mellitus, Type II. The claim is currently in the jurisdiction of the RO in Albuquerque, New Mexico. 


FINDINGS OF FACT

1. Hypertension was not present during the Veteran's active service or manifest to a compensable degree within one year of service separation, and the record contains no indication that the Veteran's post-service hypertension is causally related to his active service or any incident therein, or causally related to or aggravated by any service-connected disability.

2. The Veteran's diabetes mellitus, Type II, with erectile dysfunction, requires oral agents and a restricted diet, but does not require insulin or limitation or regulation of activities. 


CONCLUSIONS OF LAW

1. Hypertension was not incurred in active service, may not be presumed to have been incurred in active service, and is not causally related to or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

2. The criteria for assignment of an initial rating in excess of 20 percent for diabetes mellitus, type II, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.119, Diagnostic Code 7913 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

 I. Due Process

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).


 II. Merits

 A. Service Connection

The Veteran contends that his hypertension was caused by his service-connected diabetes mellitus, Type II.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2016). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service" - the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection for certain chronic diseases, such as cardiovascular-renal disease, may be established based upon a legal presumption by showing that it manifested itself to a degree of 10 percent or more within one year from the date of separation of service. 38 U.S.C.A. § 1112 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (rejecting the argument that continuity of symptomatology in § 3.303(b) has any role other than to afford an alternative route to service connection for specific chronic diseases). In addition, service connection may be granted for any disease diagnosed after service when all the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2016).

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995).

Where there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, reasonable doubt will be resolved in each such issue in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. An appellant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the evidence must preponderate against the claim. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Alemany v. Brown, 9 Vet. App. 518 (1996).

The Veteran's service treatment records (STRs) are negative for any complaints, notations or manifestations of, or treatment for, hypertension. On the contrary, his April 1966 enlistment examination listed all relevant body systems marked as normal. A July 1969 examination, performed a few months before the Veteran's separation from service, showed that all relevant body systems, including heart and vascular system, were marked as normal. Medical care was provided to the Veteran several times throughout his period of active service for other ailments such as lower back pain, bilateral leg pain, and ear trouble. The Veteran's treatment records do not indicate that he complained of or received treatment for hypertension. In the year following service, the Veteran received care from a private chiropractor for nerve root pressure. See Medical Treatment Record by Dr. O. O. Ohlhausen, May 1970. No hypertension was noted in this record.

The Veteran received a VA Examination in December 2010 which discussed his hypertension diagnosis. Specifically, the examiner noted that the Veteran had been diagnosed as having hypertension in 1984, and also that he was diagnosed with diabetes that same year. A specific date of diagnosis is not provided for either condition; however, the medical examiner stated that the Veteran's hypertension is not a complication of the diabetes because it antedated the diabetes diagnosis. The examiner also stated that the Veteran's hypertension is not worsened or increased by the diabetes.

Based on a review of the record, the Veteran is consistently treated for hypertension, which several record notations state is uncontrolled due to medication noncompliance. The clinical records note that the Veteran has risk factors for hypertension, including alcohol use and obesity. However, no examiner or physician, VA or private, has stated that the Veteran's hypertension is caused or aggravated by his diabetes mellitus, Type II and therefore there is no basis on which the Board may grant service connection for hypertension secondary to diabetes mellitus, Type II. 

Furthermore, no evidence in the record indicates that the Veteran's hypertension is otherwise related to his period of active service. Pursuant to the direct service connection requirements stated above, the Veteran must show an in-service disease or injury incurrence or aggravation and satisfy the nexus requirement to meet all three criteria for service connection (a current diagnosis of hypertension is shown, meeting the first requirement). The Board has reviewed the record in full, including medical records obtained from the Social Security Administration (SSA), and finds no basis upon which to conclude that the Veteran's hypertension is causally related to his active service or any incident therein. Indeed, the Veteran has not specifically contended otherwise. 

The Board notes that presumptive service connection for hypertension as due to exposure to Agent Orange is also not warranted. In his December 2007 VA Form 21-526 Veterans Application for Compensation or Pension, the Veteran stated that his hypertension was due to Agent Orange exposure. VA has previously conceded active duty service in the Republic of Vietnam and exposure to herbicides in the May 2009 rating decision granting service connection for diabetes mellitus, Type II.

If a Veteran was exposed to an herbicide agent during active military, naval, or air service, certain enumerated diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307 (a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e) (2015). The enumerated diseases which are deemed to be associated with herbicide exposure are AL amyloidosis; chloracne or other acneform disease consistent with chloracne; Type 2 diabetes; Hodgkin's disease; ischemic heart disease; chronic B-cell leukemia; multiple myeloma; non-Hodgkin's lymphoma; Parkinson's disease; acute and subacute peripheral neuropathy; porphyria cutanea tarda; prostate cancer; respiratory cancers (cancer of the lung, bronchus, larynx, or trachea); and certain soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). Id. The enumerated diseases do not include hypertension. 

Although the enumerated diseases do not include hypertension, a claimant may establish service connection based on exposure to Agent Orange with proof of actual direct causation. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In this case, however, the Veteran has not submitted or identified any evidence that shows that his current hypertension diagnosis was directly caused by Agent Orange exposure, nor does the record on appeal otherwise contain any probative evidence of a link between the Veteran's presumed Agent Orange exposure and his current hypertension. Rather, clinical evidence which speaks to the etiology of the Veteran's hypertension notes only that his risk factors include alcohol dependence and a family history of hypertension and heart disease. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against the claim. The record shows that hypertension was not present in service, manifest to a compensable degree within one year of service separation, nor has it been shown to be causally related to his active service or any incident therein, to include presumed Agent Orange exposure, or causally related to or aggravated by a service-connected disability, to include diabetes mellitus. 

 
 B. Higher Initial Rating for Diabetes Mellitus 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran was originally granted service connection for diabetes mellitus, Type II, with erectile dysfunction in May 2009. Diabetes mellitus is rated under Diagnostic Code (DC) 7913. 38 C.F.R. § 4.119.

Under DC 7913, a 10 percent rating is warranted for diabetes mellitus that is manageable by a restricted diet only. A 20 percent rating is warranted where insulin and restricted diet, or; use of oral hypoglycemic agent and restricted diet is required. A 40 percent rating is warranted where insulin, restricted diet, and regulation of activities is required. A 60 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted for diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulations of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119.

Note (1) to DC 7913 provides that compensable complications of diabetes are to be rated separately unless they are part of the criteria used to support a 100 percent rating (under DC 7913). Non-compensable complications are considered part of the diabetic process under DC 7913. Id. 

The criteria for rating diabetes mellitus are conjunctive, meaning that each element of the criteria is needed to meet the requirements for the specified evaluation. See Camacho v. Nicholson, 21 Vet. App. 360 (2007); see also Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive "and" in a statutory provision means that all of the conditions listed in the provision must be met). 

The Veterans STRs are devoid of any signs of or treatment for diabetes in service. The Veteran does not contend that his diabetes existed in service and reports date of diagnosis to be 1984.

VA treatment records as early as 2008 show that the Veteran was prescribed oral hypoglycemic medication for treatment of his diabetes mellitus. In December 2010, the Veteran underwent a VA examination which noted that the Veteran reported onset of diabetes in 1984, and states he was diagnosed by a private doctor. The examiner noted that the Veteran was being treated with oral medication and instructed to follow a restricted or special diet. There was no restriction in ability to perform strenuous activity. Additionally, no weight change or diabetic skin abnormalities were noted. No kidney disease, amputation, or "other" diabetic conditions were shown. 

The Veteran underwent another VA examination in April 2012 which showed that the Veteran was prescribed oral hypoglycemic agents. No restricted diet or insulin as a treatment method prescribed to the Veteran was noted. It was noted that the Veteran did not require regulation of activities as part of diabetes management and visited his diabetic care provider less than twice per month. The examination results showed that the Veteran had not had any hospitalizations for ketoacidosis or hypoglycemic episodes in the 12 months preceding the examinations. There is no documentation in the record showing the Veteran was ever hospitalized for ketoacidosis or hypoglycemic episodes. 

Associated with the record are the Veteran's SSA records. A review of these records shows that in June 2012, his condition was reported to be stable and the Veteran indicated that medication improved his condition.

An El Paso VA medical center (VAMC) primary care note from December 2013 noted that the Veteran reported that his diabetes was "acting up" and he was not compliant with his diabetes medication. There was no mention of use of insulin or limitation or restriction of activities.

Based on a review of the above, the Board finds that the Veteran meets the requirements for a disability rating of 20 percent, and no more. 

The Board has considered the Veteran's contentions to the effect that his diabetes mellitus should be rated higher than 20 percent disabling because its state has worsened. The record on appeal, however, indicates that the Veteran's condition has never required more than oral medication treatment and a restricted diet. There is no evidence that insulin is required to manage his diabetes or that a regulation of activities is necessary. The Veteran has not specifically contended otherwise. Further, the Veteran has not stated that he has had any hospitalizations for episodes of ketoacidosis or hypoglycemia. Therefore, the Veteran does not meet the requirements for an evaluation of greater than 20 percent disabling.

In reaching this decision, the Board notes that complications of the Veteran's service-connected diabetes mellitus, such as peripheral neuropathy of the right and left upper extremities and right and left lower extremities, are separately service-connected and compensated and are not at issue here. The noncompensable complications of the Veteran's diabetes mellitus include erectile dysfunction and that condition remains rated in conjunction with his diabetes mellitus, Type II. The Board finds that a separate, compensable rating for erectile dysfunction is not warranted.

Pursuant to 38 C.F.R. § 4.115b, Diagnostic Code, a 20 percent rating is available for deformity of the penis with loss of erectile power. A zero percent rating is assigned when the requirements for a compensable rating of a diagnostic code are not shown. 38 C.F.R. §§ 4.31 (2016). In this case, an October 2012 Disability Benefits Questionnaire notes that the Veteran does have both erectile dysfunction and a penile deformity, but clarifies that the deformity is less likely than not proximately due to the Veteran's diabetes mellitus. Specifically, the examiner notes that the Veteran was diagnosed in 2006 with erectile dysfunction due to his long-standing and uncontrolled diabetes. He was diagnosed with Peyronie's disease in 2008. The examiner noted that the Veteran's Peyronie's disease is a separate disease and not caused by the erectile dysfunction. As there is no relation between the Peyronie's disease and the erectile dysfunction, the erectile dysfunction disability, without penile deformity, is noncompensable and rated in conjunction with the diabetes mellitus, Type II. 

In reaching this decision, the Board notes that the United States Court of Veterans' Appeals (Court) has held that a request for a total disability based on individual unemployability (TDIU), whether expressly raised by Veteran or reasonably raised by the record, is not a separate "claim" for benefits, but rather, can be part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In other words, if the claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a disability for which an increased rating is sought, then part and parcel with the increased rating claim is the issue of whether a TDIU is warranted as a result of that disability. Id. 

In a September 2012 VA Form 21-8940, the Veteran stated that he is receiving SSA disability benefits for his service connected heart condition and diabetes with residuals and was unemployable. However, it has not been shown that gainful employment is precluded due to the Veteran's diabetes mellitus, in and of itself. In the December 2010 VA examination, the examiner noted that the Veteran was currently employed doing office work, albeit part-time work. He was employed as a firefighter and stated that he had to work part-time "due to his conditions." The April 2012 VA examiner stated that the Veteran had worked as a court reporter, but could not work since December 2007 because he was unable to feel the keys on a keyboard due to neuropathy. However, despite the impact, it was not indicated that the Veteran was unable to work due to diabetes and it seems that he subsequently was employed, as the December 2010 VA examination listed him as presently employed.



ORDER

Entitlement to service connection for hypertension, to include as secondary to diabetes mellitus, Type II, is denied.

Entitlement to an initial rating in excess of 20% for diabetes mellitus, Type II, with erectile dysfunction, is denied.




____________________________________________
K. CONNER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs